UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**NOEL CORWIN**,

       Plaintiff,

vs.

**KALAMAZOO VALLEY COMMUNITY COLLEGE,**

       Defendant.

Case No.

Hon.

_____/

SOMMERS SCHWARTZ, P.C.
Jenna H. Nakkash (P84645)
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
jnakkash@sommerspc.com

SOMMERS SCHWARTZ, P.C.
Jesse L. Young (P72614)
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiff*
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Noel Corwin (hereinafter "Plaintiff" or "CORWIN"), by and through his attorneys, for his Complaint against Defendant, Kalamazoo Valley Community College (hereinafter "Defendant" or "KVCC"), states as follows:

1

1. Plaintiff, CORWIN, is an individual residing in the City of Kalamazoo, Kalamazoo County, Michigan.

2. Defendant, KVCC, is a public community college located in the City of Kalamazoo, Kalamazoo County, Michigan.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

5. The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employed Plaintiff and other individuals within the state of Michigan.

6. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this District, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## GENERAL ALLEGATIONS

7. Defendant is an institution of higher education established and operating in Kalamazoo County, Michigan.

8. CORWIN began his employment with Defendant in October 2021 as an Instructor and most recently served as the KVCC's Program Coordinator.

9. In this position, CORWIN earned an annual base salary of $48,000 together with various fringe benefits.

10. At all times, CORWIN performed his duties in an exemplary manner.

11. While at KVCC, CORWIN reported to Kate Miller, Director of Career and Continuing Education.

12. On August 9, 2024, during a meeting with Dr. Mark Dunneback (Associate Vice President of Workforce and Community Innovation), CORWIN reported concerns of hostility in the workplace.

13. Specifically, CORWIN believed Ms. Miller and others on the Community Culinary and Nutrition Team were was retaliating against him because he raised operational, health, and safety concerns.

14. As a result, CORWIN requested that Defendant conduct an investigation into his concerns and the hostility he was experiencing.

15. CORWIN's concerns included, but were not limited to: (1) the receipt and storage of products from unapproved vendors in KVCC's Community Kitchen; (2) the receipt, comingling, and public service of canned and jarred products originating from a home kitchen; (3) the absence of ongoing time and temperature logs maintained by the Food and Nutrition Department to verify inventory controls

3

during program delivery and offsite ingredient procurement; and (4) improper storage, labeling, and dating of inventory in KVCC's Community Kitchen.

16. Despite Corwin's complaints, KVCC failed to correct the operational issues or conduct a meaningful investigation into his concerns.

17. On August 22, 2024, CORWIN met again with Dr. Dunneback.

18. During this meeting, CORWIN provided a written outline detailing the hostility he was experiencing and his belief that Ms. Miller and other members of the department were conspiring to terminate his employment.

19. CORWIN further reiterated that KVCC's Continuing Education, Community Culinary, and Nutrition Department was failing to follow proper food safety and handling protocols, and expressed concern that KVCC could lose its food service license as a result.

20. In response, Dr. Dunneback advised that he "shared" Corwin's concerns and would "look into" the matter.

21. However, Dr. Dunneback failed to follow up with CORWIN regarding his complaints.

22. On October 22, CORWIN met with Dr. Dunneback and submitted a written letter to him reiterating his same concerns.

23. Among other things, the letter states, "…Thank you for meeting with me to discuss the ongoing problems I'm having on the Community Culinary and

Nutrition Team. I am finding it more and more difficult to work productively in the department due to the hostility I'm experiencing almost daily…"

24. In addition, CORWIN requested to be reassigned to a different position within KVCC in order to avoid the toxic work environment.

25. Furthermore, CORWIN produced a copy of his July 2024 performance review along with a second, altered version that had been drafted by Ms. Miller.

26. CORWIN explained that in the altered document, his status changed from "in good standing" to showing "areas of improvement."

27. In response, Dr. Dunneback stated he would "look into what [he] could do."

28. On October 24, 2024, CORWIN met with Ms. Miller at the Culinary and Allied Health Building.

29. During this meeting, Ms. Miller admitted to altering Corwin's performance evaluation to "more accurately represent [his] learning deficiencies" and his "inability to take on additional work."

30. Moreover, CORWIN questioned why he was repeatedly being reassigned to subordinate roles within the team and explained that these ongoing reassignments made it difficult for him to prioritize his responsibilities as Program Coordinator.

31. Shortly thereafter, CORWIN submitted a written response to the altered performance review stating,

> "…I am concerned the edited probationary review submitted is not the same document presented during my August 1, 2024 review. During the review on October 24, 2024, I was informed by you the document is for review by the employee and supervisor was not intended for submission to Human Resources or to be added to my employee file. I expressed concern the boxes marked 'in good standing' and 'job mastery' during my August review are no longer noted positively in the October review. You verbally reassured me I was no longer on probationary status and the changed boxes were irrelevant. You acknowledged the documentation was changed after our initial review to 'be honest' about 'my deficit in learning' and that you are not able 'to rely on me to take on the additional work load'…. **Also of serious concern are the violations of College Policy and Public Health Department procedures I documented and shared with you previously and have brought to your attention throughout the last year. Instances of Health Code Violations were discussed again during my one-to-one Probationary Review on October 24th, 2024. These serious gross violations can result in the immediate suspension of the State of Michigan Food Service License prohibiting all food service operations at the facility."** (Emphasis added).

32. On November 12, 2024, CORWIN was scheduled to meet with Dr. Dunneback to discuss a potential new position within KVCC.

33. Upon arriving at the meeting, CORWIN was surprised to find that Ms. Miller was already present.

34. During the meeting, Dr. Dunneback advised that he had developed a "plan for improvement" for CORWIN, which included several job duties and policies that CORWIN was unfamiliar with and that had not previously been assigned to him.

6

35. Additionally, Dr. Dunneback informed CORWIN that his performance would be placed under review, that he would be placed on a performance improvement plan ("PIP"), and that his future employment with KVCC would be determined after December 18, 2024.

36. CORWIN questioned if the list was generated or reviewed by human resources and if Dr. Dunneback had advanced the issue of his altered performance review to human resources.

37. In response, Dr. Dunneback permitted Ms. Miller to answer, and she stated that the document had been edited to reflect "coaching and feedback" on why CORWIN was no longer "in good standing."

38. Nevertheless, Dr. Dunneback admitted that the list had not been reviewed by human resources and stated that he would be sending a copy after the meeting.

39. When CORWIN asked for a copy of this list, Dr. Dunneback refused and advised it would be "added to [his] employee file."

40. CORWIN also inquired about the status of his prior request for investigation.

41. Dr. Dunneback responded that he did "not find anything that warranted an investigation" and "would not be bringing the issues to human resources…"

42. At the end of the meeting, Dr. Dunneback discouraged CORWIN from contacting human resources directly and stated that he would communicate with Aaron Hilliard (Vice President of Human Resources) about the "next steps."

43. On November 15, Mr. Hilliard met with CORWIN to discuss his concerns.

44. During this meeting, CORWIN reiterated his ongoing concerns about hostility in the workplace and provided Mr. Hilliard with several documents including the altered "performance evaluation."

45. Furthermore, CORWIN reiterated his initial concerns regarding food and safety violations and the retaliation he experienced after making his complaints.

46. CORWIN also advised that the ongoing issues were negatively affecting his health and formally requested an investigation into his claims of a hostile work environment.

47. In response, Mr. Hilliard assured CORWIN that KVCC takes claims of hostility seriously and that the university would investigate his concerns.

48. On November 18, CORWIN applied for and availed himself of an approved FMLA leave and did not return to KVCC until January 8, 2025.

49. Upon his return, on January 9, 2025, CORWIN was instructed to report exclusively to KVCC's Groves Campus and was prohibited from working at any other campus location.

50. The next day, CORWIN sent an email to Dr. Dunneback, Ms. Miller, and Mr. Hilliard asking for guidance on programs he had previously been assigned. However, CORWIN did not receive a response.

51. On January 13, CORWIN's meeting schedule was altered to exclude him from meetings regarding Community Culinary Programming.

52. On January 15, CORWIN met with Dr. Dunneback to discuss what projects he was currently working on.

53. During this meeting, CORWIN asked Dr. Dunneback whether there was a specific area or program he should prioritize. Dr. Dunneback replied, "It's not my area so I don't know specifically without taking to [Ms. Miller]."

54. In response, CORWIN expressed that he believed he was being retaliated against by Ms. Miller and renewed his request for reassignment from the Community Culinary Department.

55. Dr. Dunneback asked CORWIN whether he had reported his concerns about retaliation to human resources and CORWIN confirmed that he had.

56. On January 21, CORWIN filed a complaint with MIOSHA that states, "Complainant alleges after continuously seeking assistance in addressing safety concerns regarding standard operating procedures and employee safety and training in using the machinery in the kitchen from upper management, he began

experiencing harassment, demotions, reductions or adjustments in schedule, negative performance evaluations, etc. and continues to be an ongoing issue."

57. On January 24, after treating with his healthcare provider and therapist, CORWIN took another FMLA approved day off.

58. On January 27, upon returning to work, CORWIN discovered that his access to his work email and KVCC's server had been restricted.

59. CORWIN subsequently sent an email from his personal account to Ms. Miller and Dr. Dunneback, informing them that he would be continuing his FMLA leave in the future. Shortly thereafter, Mr. Hilliard called CORWIN and informed him that his employment was being terminated.

60. KVCC's stated reason for terminating CORWIN was his alleged failure "…to improve on [his] PIP."

## COUNT I:
## VIOLATION OF THE MICHIGAN WHISTLEBLOWERS' PROTECTION ACT, MCL § 15.361 *et seq.*

61. CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

62. The Michigan Whistleblowers' Protection Act ("WPA"), MCL § 15.362, provides as follows:

> **An employer shall not discharge**, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, privileges of employment **because the employee, or a person acting on behalf of the employee, reports or is about to**

10

**report, verbally or in writing, a violation or a suspected violation of a law** or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States **to a public body…**

(Emphasis added).

63. At all material times, CORWIN was an employee within the meaning of the WPA, MCL § 15.361(a).

64. At all material times, Defendant was CORWIN's employer within the meaning of the WPA, MCL § 15.361(b).

65. CORWIN engaged in protected activity under the WPA by reporting violations and/or suspected violations of law to the Michigan Department of Occupational Safety and Health Administration.

66. As a direct result of CORWIN engaging in protected activity described above, Defendant intentionally discriminated and retaliated against CORWIN and otherwise violated his rights under the WPA by terminating CORWIN's employment.

67. As a direct and proximate result of Defendant's unlawful actions, CORWIN sustained damages including, but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community.

**WHEREFORE**, CORWIN requests that this Court enter a judgment in his favor for back wages and fringe benefits, future wages and fringe benefits, damages for emotional and mental distress, and attorney fees and costs.

## COUNT II:
## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

68. CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

69. It is Michigan's public policy to promote adherence to state and federal statutes and regulations and it is in the best interest of the State and its citizens to protect and promote compliance with legal authority.

70. It is Michigan's public policy to allow employees to perform their job duties in accordance with the law without fear of retaliation.

71. It is Michigan's public policy to allow employees to express opinions, concerns, and complaints to appropriate authorities as to violations of laws and regulations that they become aware of in the course of performing their job and/or that they are asked to ignore, participate in, or otherwise permit to continue.

72. Here, CORWIN learned that KVCC was engaging in unlawful health and safety practices.

73. In August 2024, CORWIN outlined these concerns to his manager, Ms. Miller. Instead of investigating these claims, Ms. Miller subjected CORWIN to a hostile work environment.

74. On August 22, CORWIN reported his concerns, along with the hostility from Ms. Miller, to Dr. Dunneback.

75. On October 22, CORWIN submitted a written letter to Dr. Dunneback reiterating the hostility and advising it was becoming increasingly more difficult to work under those conditions. Instead of addressing CORWIN's concerns, Dr. Dunneback placed CORWIN on a performance improvement plan.

76. On November 15, Mr. Hilliard told CORWIN that his complaints "did not merit investigation" and that he was not a "protected status."

77. It is clear that KVCC was concerned with CORWIN's continued internal reports of the university's unlawful health and safety practices and retaliation he was experiencing.

78. KVCC terminated CORWIN in retaliation for his internal reports.

79. KVCC's termination of CORWIN constituted a violation of Michigan Public Policy.

80. As a direct and proximate result of Defendant's unlawful actions, CORWIN sustained damages including, but not limited to, loss of earnings, loss of

career opportunities, mental and emotional distress and loss of reputation and esteem in the community.

**WHEREFORE**, CORWIN requests that this Court enter a Judgment in his favor for back wages and fringe benefits, future wages and fringe benefits, damages for emotional and mental distress, and attorney fees and costs.

### COUNT III: VIOLATION OF FAMILY MEDICAL LEAVE ACT, 29 U.S.C. § 2601 *et seq.* – INTERFERENCE

81. CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

82. CORWIN was an "eligible employee" under the FMLA.

83. KVCC is an "employer" under the FMLA.

84. It is unlawful under the FMLA for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

85. The FMLA provides an employee up to 12 weeks of leave for a serious health condition. 29 U.S.C. § 2612(a); 29 CFR 825.112(a)(1) – (6), .200(a).

86. CORWIN provided KVCC with adequate notice of his need for leave pursuant to the FMLA.

87. KVCC interfered with CORWIN's FMLA rights by his her employment less than three weeks after his return to work from his FMLA approved leave.

88. KVCC knowingly and willfully engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to CORWIN's rights under the FMLA.

89. As a direct and proximate result of KVCC's adverse actions, CORWIN suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

**WHEREFORE**, CORWIN requests that this Court enter its Judgment against Defendant in whatever amount of damages is shown to be established by the proofs in this cause, together with compensatory damages, liquidated damages, interest, costs, and attorney fees in accordance with 29 U.S.C. § 2617(a)(3) as well as any equitable relief shown to be established by the proofs in this cause.

## COUNT IV:
## VIOLATION OF FAMILY MEDICAL LEAVE ACT,
## 29 U.S.C. § 2601 *et seq.*, – RETALIATION

90. CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

91. CORWIN was an "eligible employee" under the FMLA.

92. KVCC is an "employer" under the FMLA.

93. It is unlawful under the FMLA for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." by the FMLA, 29 U.S.C. § 2615(a).

94. KVCC knowingly and willfully engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to CORWIN's rights under the FMLA.

95. KVCC's violations of FMLA included, but were not limited to, terminating CORWIN's employment less than three weeks after he returned to work from an approved FMLA leave.

96. As a direct and proximate result of KVCC's adverse actions, CORWIN has suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

**WHEREFORE**, CORWIN requests that this Court enter its Judgment against Defendant in whatever amount of damages is shown to be established by the proofs in this cause, together with compensatory damages, liquidated damages, interest, costs, and attorney fees in accordance with 29 U.S.C. § 2617(a)(3) as well as any equitable relief shown to be established by the proofs in this cause.

SOMMERS SCHWARTZ, P.C.

Dated:   April 25, 2025

*/s/ Jenna H. Nakkash*
SOMMERS SCHWARTZ, P.C.
Jenna H. Nakkash (P84645)
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
jnakkash@sommerspc.com

Jesse L. Young (P72614)

141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**NOEL CORWIN**,

        Plaintiff,

vs.

**KALAMAZOO VALLEY COMMUNITY COLLEGE,**

        Defendant.

Case No.

Hon.

_____/

SOMMERS SCHWARTZ, P.C.
Jenna H. Nakkash (P84645)
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
jnakkash@sommerspc.com

SOMMERS SCHWARTZ, P.C.
Jesse L. Young (P72614)
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiff*

_____/

## DEMAND FOR TRIAL BY JURY

**NOW COMES** Plaintiff, Noel Corwin, by and through his attorneys, Sommers Schwartz, P.C., and hereby demand a trial by jury in the above matter.

                                                SOMMERS SCHWARTZ, P.C.

Dated: April 25, 2025

*/s/ Jenna H. Nakkash*
Jenna H. Nakkash (P84645)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff