UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NOEL CORWIN,

       Plaintiff,

                                   Case No:  1:25-cv-00469-PLM-RSK

v

                                   Hon. Paul L. Maloney

KALAMAZOO VALLEY
COMMUNITY COLLEGE,

       Defendant.

_____/

## ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND RELIANCE ON DEMAND FOR TRIAL BY JURY

Defendant, Kalamazoo Valley Community College (hereinafter "Defendant" or "KVCC"), by and through its attorneys, Miller Johnson, asserts the following Answer to Plaintiff's Complaint and Demand for Trial by Jury:

1.     Plaintiff, CORWIN, is an individual residing in the City of Kalamazoo, Kalamazoo County, Michigan.

**ANSWER:**    **Upon information and belief, Defendant admits the allegations in Paragraph 1 of the Complaint.**

2.     Defendant, KVCC, is a public community college located in the City of Kalamazoo, Kalamazoo County, Michigan.

**ANSWER:**    **Defendant admits the allegations in Paragraph 2 of the Complaint.**

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**ANSWER:**    **Defendant denies any allegation of a violation of the Family Medical Leave Act (FMLA), but does not dispute that this Court has subject matter jurisdiction over Plaintiff's purported claims under the FMLA pursuant to 28 U.S.C. § 1331.**

4.    The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

**ANSWER:    Defendant neither admits nor denies the allegations in Paragraph 4 of the Complaint as supplemental jurisdiction is a matter of discretion for the Court.**

5.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employed Plaintiff and other individuals within the state of Michigan.

**ANSWER:    Defendant does not dispute that this Court has personal jurisdiction over Defendant.**

6.    Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this District, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

**ANSWER:    Defendant does not deny that venue is proper in this Court based on the allegations of this Complaint, but Defendant denies that any acts or omissions occurred giving rise to the claims pled in this Complaint.**

## GENERAL ALLEGATIONS

7.    Defendant is an institution of higher education established and operating in Kalamazoo County, Michigan.

**ANSWER:    Defendant admits the allegations in Paragraph 7 of the Complaint.**

8.    CORWIN began his employment with Defendant in October 2021 as an Instructor and most recently served as the KVCC's Program Coordinator.

**ANSWER:    Defendant denies the allegations in Paragraph 8 of the Complaint and admits only that Plaintiff most recent position was as a Career & Continuing Education Program Coordinator with Kalamazoo Valley Community College (KVCC). Defendant further admits that Plaintiff held a short-term position**

**with KVCC in 2021. Except as specifically admitted, Defendant denies the allegations in Paragraph 8 of the Complaint.**

9.    In this position, CORWIN earned an annual base salary of $48,000 together with various fringe benefits.

**ANSWER:    Defendant denies the allegations in Paragraph 9 of the Complaint and states, upon information and belief, Plaintiff earned a base salary of $49,556.00 in addition to benefits.**

10.    At all times, CORWIN performed his duties in an exemplary manner.

**ANSWER:    Defendant denies the allegations in Paragraph 10 of the Complaint.**

11.    While at KVCC, CORWIN reported to Kate Miller, Director of Career and Continuing Education.

**ANSWER:    Defendant admits the allegations in Paragraph 11 of the Complaint.**

12.    On August 9, 2024, during a meeting with Dr. Mark Dunneback (Associate Vice President of Workforce and Community Innovation), CORWIN reported concerns of hostility in the workplace.

**ANSWER:    Defendant admits only that Plaintiff and Dr. Dunneback had a meeting on or about August 9, 2024.  Except as specifically admitted, Defendant denies the allegations in Paragraph 12 of the Complaint.**

13.    Specifically, CORWIN believed Ms. Miller and others on the Community Culinary and Nutrition Team were was retaliating against him because he raised operational, health, and safety concerns.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff "believed," but Defendant denies that Plaintiff expressed any such beliefs to KVCC during the meeting on August 9, 2024 or at any other time.  Except as expressly admitted, Defendant denies the allegations in Paragraph 13 of the Complaint.**

14.    As a result, CORWIN requested that Defendant conduct an investigation into his concerns and the hostility he was experiencing.

3

**ANSWER:    Defendant denies the allegations in Paragraph 14 of the Complaint.**

15.    CORWIN's concerns included, but were not limited to: (1) the receipt and storage of products from unapproved vendors in KVCC's Community Kitchen; (2) the receipt, comingling, and public service of canned and jarred products originating from a home kitchen; (3) the absence of ongoing time and temperature logs maintained by the Food and Nutrition Department to verify inventory controls during program delivery and offsite ingredient procurement; and (4) improper storage, labeling, and dating of inventory in KVCC's Community Kitchen.

**ANSWER:    Defendant lacks knowledge or information sufficient to form a belief as to whether Plaintiff had any concerns, but Defendant denies that Plaintiff expressed any such concerns to KVCC during the August 9, 2024 meeting or at any other time.  Except as expressly admitted, Defendant denies the allegations in Paragraph 15 of the Complaint.**

16.    Despite Corwin's complaints, KVCC failed to correct the operational issues or conduct a meaningful investigation into his concerns.

**ANSWER:    Defendant denies the allegations in Paragraph 16 of the Complaint.**

17.    On August 22, 2024, CORWIN met again with Dr. Dunneback.

**ANSWER:    Defendant admits the allegations in Paragraph 17 of the Complaint.**

18.    During this meeting, CORWIN provided a written outline detailing the hostility he was experiencing and his belief that Ms. Miller and other members of the department were conspiring to terminate his employment.

**ANSWER:    Defendant denies the allegations in Paragraph 18 of the Complaint.**

19.    CORWIN further reiterated that KVCC's Continuing Education, Community Culinary, and Nutrition Department was failing to follow proper food safety and handling protocols, and expressed concern that KVCC could lose its food service license as a result.

**ANSWER:**    **Defendant denies the allegations in Paragraph 19 of the Complaint.**

20.    In response, Dr. Dunneback advised that he "shared" Corwin's concerns and would "look into" the matter.

**ANSWER:**    **Defendant admits only that Dr. Dunneback advised Plaintiff that he would look into concerns Plaintiff raised about not getting along with his manager. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 20 of the Complaint.**

21.    However, Dr. Dunneback failed to follow up with CORWIN regarding his complaints.

**ANSWER:**    **Defendant denies the allegations in Paragraph 21 of the Complaint.**

22.    On October 22, CORWIN met with Dr. Dunneback and submitted a written letter to him reiterating his same concerns.

**ANSWER:**    **Defendant admits only that Corwin submitted a letter to Dr. Dunneback on November 13, 2024 that the Plaintiff had dated October 22. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 22 of the Complaint.**

23.    Among other things, the letter states, "...Thank you for meeting with me to discuss the ongoing problems I'm having on the Community Culinary and Nutrition Team. I am finding it more and more difficult to work productively in the department due to the hostility I'm experiencing almost daily..."

**ANSWER:**    **Defendant admits only that Paragraph 23 of the Complaint contains a partial and incomplete excerpt from a letter Plaintiff submitted to Dr. Mark Dunneback on November 13, 2024. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 23 of the Complaint.**

24.    In addition, CORWIN requested to be reassigned to a different position within KVCC in order to avoid the toxic work environment.

**ANSWER:**    **Defendant admits only that Plaintiff requested a new supervisor. Except as specifically admitted, the remaining allegations in Paragraph 24 of the Complaint are denied.**

5

25.      Furthermore, CORWIN produced a copy of his July 2024 performance review along with a second, altered version that had been drafted by Ms. Miller.

**ANSWER:      Defendant denies the allegations in Paragraph 25 of the Complaint.**

26.      CORWIN explained that in the altered document, his status changed from "in good standing" to showing "areas of improvement."

**ANSWER:      Defendant denies the allegations in Paragraph 26 of the Complaint.**

27.      In response, Dr. Dunneback stated he would "look into what [he] could do."

**ANSWER:      Defendant denies the allegations in Paragraph 27 of the Complaint.**

28.      On October 24, 2024, CORWIN met with Ms. Miller at the Culinary and Allied Health Building.

**ANSWER:      Defendant admits the allegations in Paragraph 28 of the Complaint.**

29.      During this meeting, Ms. Miller admitted to altering Corwin's performance evaluation to "more accurately represent [his] learning deficiencies" and his "inability to take on additional work."

**ANSWER:      Defendant denies the allegations in Paragraph 29 of the Complaint.**

30.      Moreover, CORWIN questioned why he was repeatedly being reassigned to subordinate roles within the team and explained that these ongoing reassignments made it difficult for him to prioritize his responsibilities as Program Coordinator.

**ANSWER:      Defendant denies the allegations in Paragraph 30 of the Complaint.**

31.      Shortly thereafter, CORWIN submitted a written response to the altered performance review stating,

> "...I am concerned the edited probationary review submitted is not the same document presented during my August 1, 2024 review. During the review on October 24, 2024, I was informed by you the document is for review by the employee and supervisor was not intended for submission to Human Resources or to be added to my employee file. I expressed concern the

6

boxes marked 'in good standing' and 'job mastery' during my August review are no longer noted positively in the October review. You verbally reassured me I was no longer on probationary status and the changed boxes were irrelevant. You acknowledged the documentation was changed after our initial review to 'be honest' about 'my deficit in learning' and that you are not able 'to rely on me to take on the additional work load'.... **Also of serious concern are the violations of College Policy and Public Health Department procedures I documented and shared with you previously and have brought to your attention throughout the last year. Instances of Health Code Violations were discussed again during my one-to-one Probationary Review on October 24th, 2024. These serious gross violations can result in the immediate suspension of the State of Michigan Food Service License prohibiting all food service operations at the facility."** (Emphasis added).

**ANSWER:    Upon information and belief, Defendant denies the allegations in Paragraph 31 of the Complaint.**

32.    On November 12, 2024, CORWIN was scheduled to meet with Dr. Dunneback to discuss a potential new position within KVCC.

**ANSWER:    Defendant admits only that Plaintiff was scheduled to meet with Dr. Dunneback on or about November 12, 2024. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 32 of the Complaint.**

33.    Upon arriving at the meeting, CORWIN was surprised to find that Ms. Miller was already present.

**ANSWER:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint and therefore denies them.**

34.    During the meeting, Dr. Dunneback advised that he had developed a "plan for improvement" for CORWIN, which included several job duties and policies that CORWIN was unfamiliar with and that had not previously been assigned to him.

**ANSWER:    Defendant admits that during a meeting on November 12, 2024, Plaintiff was placed on a performance improvement plan, which he refused to sign. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 34 of the Complaint.**

35.    Additionally, Dr. Dunneback informed CORWIN that his performance would be placed under review, that he would be placed on a performance improvement plan

7

("PIP"), and that his future employment with KVCC would be determined after December 18, 2024.

**ANSWER:    Defendant admits that Plaintiff was placed on a performance improvement plan on November 12, 2024, which plan indicated that Plaintiff would be reevaluated on or before December 17, 2024. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 35 of the Complaint.**

36.    CORWIN questioned if the list was generated or reviewed by human resources and if Dr. Dunneback had advanced the issue of his altered performance review to human resources.

**ANSWER:    Defendant denies the allegations in Paragraph 36 of the Complaint.**

37.    In response, Dr. Dunneback permitted Ms. Miller to answer, and she stated that the document had been edited to reflect "coaching and feedback" on why CORWIN was no longer "in good standing."

**ANSWER:    Defendant denies the allegations in Paragraph 37 of the Complaint.**

38.    Nevertheless, Dr. Dunneback admitted that the list had not been reviewed by human resources and stated that he would be sending a copy after the meeting.

**ANSWER:    Defendant denies the allegations in Paragraph 38 of the Complaint.**

39.    When CORWIN asked for a copy of this list, Dr. Dunneback refused and advised it would be "added to [his] employee file."

**ANSWER:    Defendant denies the allegations in Paragraph 39 of the Complaint.**

40.    CORWIN also inquired about the status of his prior request for investigation.

**ANSWER:    Defendant denies the allegations in Paragraph 40 of the Complaint.**

41.    Dr. Dunneback responded that he did "not find anything that warranted an investigation" and "would not be bringing the issues to human resources..."

**ANSWER:    Defendant denies the allegations in Paragraph 41 of the Complaint.**

42.    At the end of the meeting, Dr. Dunneback discouraged CORWIN from contacting human resources directly and stated that he would communicate with Aaron Hilliard (Vice President of Human Resources) about the "next steps."

**ANSWER:    Defendant admits that during the meeting on November 12, 2024, Dr. Dunneback informed Plaintiff that Dr. Dunneback would speak with Aaron Hilliard (Vice President of Human Resources) about Plaintiff.  Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 42 of the Complaint.**

43.    On November 15, Mr. Hilliard met with CORWIN to discuss his concerns.

**ANSWER:    Defendant admits the allegations in Paragraph 43 of the Complaint.**

44.    During this meeting, CORWIN reiterated his ongoing concerns about hostility in the workplace and provided Mr. Hilliard with several documents including the altered "performance evaluation."

**ANSWER:    Defendant admits only that during a meeting with Mr. Hilliard on November 15, 2024, Plaintiff shared issues he had with his peers, and his views on his performance evaluation. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 44 of the Complaint.**

45.    Furthermore, CORWIN reiterated his initial concerns regarding food and safety violations and the retaliation he experienced after making his complaints.

**ANSWER:    Defendant denies the allegations in Paragraph 45 of the Complaint.**

46.    CORWIN also advised that the ongoing issues were negatively affecting his health and formally requested an investigation into his claims of a hostile work environment.

**ANSWER:    Defendant denies the allegations in Paragraph 46 of the Complaint.**

47.    In response, Mr. Hilliard assured CORWIN that KVCC takes claims of hostility seriously and that the university would investigate his concerns.

9

**ANSWER:    Defendant admits only that Mr. Hilliard shared with Plaintiff that his reporting relationship would not be changed. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 47 of the Complaint.**

48.    On November 18, CORWIN applied for and availed himself of an approved FMLA leave and did not return to KVCC until January 8, 2025.

**ANSWER:    Defendant admits that Plaintiff was approved for leave under the Family Medical Leave Act (FMLA) and that he was on leave from November 18, 2024 through January 7, 2025. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 48 of the Complaint.**

49.    Upon his return, on January 9, 2025, CORWIN was instructed to report exclusively to KVCC's Groves Campus and was prohibited from working at any other campus location.

**ANSWER:    Defendant admits that Plaintiff was instructed to report to KVCC's Groves Campus following his performance improvement plan, and his return to work. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 49 of the Complaint.**

50.    The next day, CORWIN sent an email to Dr. Dunneback, Ms. Miller, and Mr. Hilliard asking for guidance on programs he had previously been assigned. However, CORWIN did not receive a response.

**ANSWER:    Defendant admits only that on January 10, 2025, Plaintiff sent an email to Dr. Dunneback. Ms. Miller, and Mr. Hilliard regarding his work assignments. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 50 of the Complaint.**

51.    On January 13, CORWIN's meeting schedule was altered to exclude him from meetings regarding Community Culinary Programming.

**ANSWER:    Defendant denies the allegations in Paragraph 51 of the Complaint.**

52.    On January 15, CORWIN met with Dr. Dunneback to discuss what projects he was currently working on.

**ANSWER:    Defendant denies the allegations in Paragraph 52 of the Complaint.**

53.     During this meeting, CORWIN asked Dr. Dunneback whether there was a specific area or program he should prioritize. Dr. Dunneback replied, "It's not my area so I don't know specifically without taking to [Ms. Miller]."

**ANSWER:     Defendant denies the allegations in Paragraph 53 of the Complaint.**

54.     In response, CORWIN expressed that he believed he was being retaliated against by Ms. Miller and renewed his request for reassignment from the Community Culinary Department.

**ANSWER:     Defendant denies the allegations in Paragraph 54 of the Complaint.**

55.     Dr. Dunneback asked CORWIN whether he had reported his concerns about retaliation to human resources and CORWIN confirmed that he had.

**ANSWER:     Defendant denies the allegations in Paragraph 55 of the Complaint.**

56.     On January 21, CORWIN filed a complaint with MIOSHA that states, "Complainant alleges after continuously seeking assistance in addressing safety concerns regarding standard operating procedures and employee safety and training in using the machinery in the kitchen from upper management, he began experiencing harassment, demotions, reductions or adjustments in schedule, negative performance evaluations, etc. and continues to be an ongoing issue."

**ANSWER:     Upon information and belief, admitted.**

57.     On January 24, after treating with his healthcare provider and therapist, CORWIN took another FMLA approved day off.

**ANSWER:     Defendant admits only that Plaintiff requested time off on January 24, 2025. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff took or requested the day off after treating with his healthcare provider and therapist.  Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 57 of the Complaint.**

11

58.    On January 27, upon returning to work, CORWIN discovered that his access to his work email and KVCC's server had been restricted.

**ANSWER:    Defendant admits only that Plaintiff's access to work email and KVCC's servers was removed following his separation from KVCC on or about January 24, 2025. Defendant lacks knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 58 of the Complaint and therefore denies them.**

59.    CORWIN subsequently sent an email from his personal account to Ms. Miller and Dr. Dunneback, informing them that he would be continuing his FMLA leave in the future. Shortly thereafter, Mr. Hilliard called CORWIN and informed him that his employment was being terminated.

**ANSWER:    Defendant admits only that on or about January 24, 2025, Plaintiff sent an email to Ms. Miller, Dr. Dunneback, and Mr. Hilliard that stated in part "I will out [sic] of work today and follow up with care provider to submit FMLA paperwork," and that Mr. Hilliard informed Mr. Corwin that he was separated from employment. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 59 of the Complaint.**

60.    KVCC's stated reason for terminating CORWIN was his alleged failure "...to improve on [his] PIP."

**ANSWER:    Defendant admits that Plaintiff's failure to show the necessary improvement and meet the requirements of his performance improvement plan was among the reasons for his separation.  Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 60 of the Complaint.**

**COUNT I:**
**VIOLATION OF THE MICHIGAN WHISTLEBLOWERS'**
**PROTECTION ACT, MCL § 15.361 *et seq*.**

61.    CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

**ANSWER:    Defendant incorporates by reference its answers to Paragraphs 1-60 of the Complaint as though set forth fully herein.**

62.     The Michigan Whistleblowers' Protection Act ("WPA"), MCL § 15.362,

provides as follows:

> **An employer shall not discharge**, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, privileges of employment **because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law** or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States **to a public  body...**

(Emphasis added).

**ANSWER:     The allegations in Paragraph 62 of the Complaint state a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that Paragraph 62 contains a partial recitation of the Michigan Whistleblower's Protection Act.**

63.     At all material times, CORWIN was an employee within the meaning of the

WPA, MCL § 15.361(a).

**ANSWER:     The allegations in Paragraph 63 of the Complaint state a legal conclusion to which no response is required.**

64.     At all material times, Defendant was CORWIN's employer within the

meaning of the WPA, MCL § 15.361(b).

**ANSWER:     The allegations in Paragraph 64 of the Complaint state a legal conclusion to which no response is required.**

65.     CORWIN engaged in protected activity under the WPA by reporting

violations and/or suspected violations of law to the Michigan Department of Occupational Safety

and Health Administration.

**ANSWER:     The allegations in Paragraph 65 of the Complaint state a legal conclusion to which no response is required.**

66.     As a direct result of CORWIN engaging in protected activity described

above, Defendant intentionally discriminated and retaliated against CORWIN and otherwise

violated his rights under the WPA by terminating CORWIN's employment.

**ANSWER:    Defendant denies the allegations in Paragraph 66 of the Complaint.**

67.    As a direct and proximate result of Defendant's unlawful actions, CORWIN sustained damages including, but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress, loss of reputation and esteem in the community.

**ANSWER:    Defendant denies the allegations in Paragraph 67 of the Complaint.**

**COUNT II:**
**WRONGFUL DISCHARGE IN VIOLATION OF**
**MICHIGAN PUBLIC POLICY**

68.    CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

**ANSWER:    Defendant incorporates by reference its answers to Paragraphs 1-67 of the Complaint as though set forth fully herein.**

69.    It is Michigan's public policy to promote adherence to state and federal statutes and regulations and it is in the best interest of the State and its citizens to protect and promote compliance with legal authority.

**ANSWER:    The allegations in Paragraph 69 of the Complaint state a legal conclusion to which no response is required.**

70.    It is Michigan's public policy to allow employees to perform their job duties in accordance with the law without fear of retaliation.

**ANSWER:    The allegations in Paragraph 70 of the Complaint state a legal conclusion to which no response is required.**

71.    It is Michigan's public policy to allow employees to express opinions, concerns, and complaints to appropriate authorities as to violations of laws and regulations that they become aware of in the course of performing their job and/or that they are asked to ignore, participate in, or otherwise permit to continue.

**ANSWER:    The allegations in Paragraph 71 of the Complaint state a legal conclusion to which no response is required.**

14

72.    Here, CORWIN learned that KVCC was engaging in unlawful health and safety practices.

**ANSWER:    Defendant denies the allegations in paragraph 72 of the Complaint**

73.    In August 2024, CORWIN outlined these concerns to his manager, Ms. Miller. Instead of investigating these claims, Ms. Miller subjected CORWIN to a hostile work environment.

**ANSWER:    Defendant denies the allegations in paragraph 73 of the Complaint**

74.    On August 22, CORWIN reported his concerns, along with the hostility from Ms. Miller, to Dr. Dunneback.

**ANSWER:    Defendant admits only that Plaintiff complained about Ms. Miller to Dr. Dunneback on or about August 22, 2024. Except as specifically admitted, Defendant denies the remaining allegations in Paragraph 74 of the Complaint.**

75.    On October 22, CORWIN submitted a written letter to Dr. Dunneback reiterating the hostility and advising it was becoming increasingly more difficult to work under those conditions. Instead of addressing CORWIN's concerns, Dr. Dunneback placed CORWIN on a performance improvement plan.

**ANSWER:    Defendant admits only that Plaintiff submitted a letter to Dr. Dunneback on November 13, 2024, which was dated by Plaintiff October 22, and that the letter contained complaints of inter-work place conflict and griping about his supervisor, and that Plaintiff was subject to a performance improvement plan. Except as specifically admitted, Defendant denies the allegations in Paragraph 75 of the Complaint.**

76.    On November 15, Mr. Hilliard told CORWIN that his complaints "did not merit investigation" and that he was not a "protected status."

**ANSWER:    Defendant denies the allegations in Paragraph 76 of the Complaint.**

77.    It is clear that KVCC was concerned with CORWIN's continued internal reports of the university's unlawful health and safety practices and retaliation he was experiencing.

15

**ANSWER:    Defendant denies the allegations in Paragraph 77 of the Complaint.**

78.    KVCC terminated CORWIN in retaliation for his internal reports.

**ANSWER:    Defendant denies the allegations in Paragraph 78 of the Complaint.**

79.    KVCC's termination of CORWIN constituted a violation of Michigan Public Policy.

**ANSWER:    Defendant denies the allegations in Paragraph 79 of the Complaint.**

80.    As a direct and proximate result of Defendant's unlawful actions, CORWIN sustained damages including, but not limited to, loss of earnings, loss of career opportunities, mental and emotional distress and loss of reputation and esteem in the community.

**ANSWER:    Defendant denies the allegations in Paragraph 80 of the Complaint.**

## COUNT III:
## VIOLATION OF FAMILY MEDICAL LEAVE ACT,
## 29 U.S.C. § 2601 *et seq.* – INTERFERENCE

81.    CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

**ANSWER:    Defendant incorporates by reference its answers to Paragraphs 1-80 of the Complaint as though set forth fully herein.**

82.    CORWIN was an "eligible employee" under the FMLA.

**ANSWER:    The allegations in Paragraph 82 of the Complaint state a legal conclusion to which no response is required.**

83.    KVCC is an "employer" under the FMLA.

**ANSWER:    The allegations in Paragraph 83 of the Complaint state a legal conclusion to which no response is required.**

84.    It is unlawful under the FMLA for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA.

**ANSWER:    The allegations in Paragraph 84 of the Complaint state a legal conclusion to which no response is required.**

16

85.    The FMLA provides an employee up to 12 weeks of leave for a serious health condition. 29 U.S.C. § 2612(a); 29 CFR 825.112(a)(1) – (6), .200(a).

**ANSWER:    The allegations in Paragraph 85 of the Complaint state a legal conclusion to which no response is required.**

86.    CORWIN provided KVCC with adequate notice of his need for leave pursuant to the FMLA.

**ANSWER:    Defendant denies the allegations in Paragraph 86 of the Complaint.**

87.    KVCC interfered with CORWIN's FMLA rights by his her employment less than three weeks after his return to work from his FMLA approved leave.

**ANSWER:    Defendant denies the allegations in Paragraph 87 of the Complaint.**

88.    KVCC knowingly and willfully engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to CORWIN's rights under the FMLA.

**ANSWER:    Defendant denies the allegations in Paragraph 88 of the Complaint.**

89.    As a direct and proximate result of KVCC's adverse actions, CORWIN suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

**ANSWER:    Defendant denies the allegations in Paragraph 89 of the Complaint.**

**COUNT IV:**
**VIOLATION OF FAMILY MEDICAL LEAVE ACT,**
**29 U.S.C. § 2601 _et seq_., – RETALIATION**

90.    CORWIN incorporates by refence paragraph's 1 through 60 of this Complaint.

**ANSWER:    Defendant incorporates by reference its answers to Paragraphs 1-89 of the Complaint as though set forth fully herein.**

91.    CORWIN was an "eligible employee" under the FMLA.

17

**ANSWER:    The allegations in Paragraph 91 of the Complaint state a legal conclusion to which no response is required.**

92.    KVCC is an "employer" under the FMLA.

**ANSWER:    The allegations in Paragraph 92 of the Complaint state a legal conclusion to which no response is required.**

93.    It is unlawful under the FMLA for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." by the FMLA, 29 U.S.C. § 2615(a).

**ANSWER:    The allegations in Paragraph 93 of the Complaint state a legal conclusion to which no response is required.**

94.    KVCC knowingly and willfully engaged in intentional violations of the FMLA and further, acted with malice and/or with reckless indifference to CORWIN's rights under the FMLA.

**ANSWER:    Defendant denies the allegations in Paragraph 94 of the Complaint.**

95.    KVCC's violations of FMLA included, but were not limited to, terminating CORWIN's employment less than three weeks after he returned to work from an approved FMLA leave.

**ANSWER:    Defendant denies the allegations in Paragraph 95 of the Complaint.**

96.    As a direct and proximate result of KVCC's adverse actions, CORWIN has suffered damages, including but not limited to loss of past and future income and loss of employee benefits.

**ANSWER:    Defendant denies the allegations in Paragraph 96 of the Complaint.**

<u>**AFFIRMATIVE AND OTHER DEFENSES**</u>

Without admitting any of the allegations in the Complaint and without admitting or acknowledging that they bear any burden of proof as to any of them, Defendant asserts the

18

following affirmative and/or special defenses to Plaintiff's Complaint. Defendant intends to rely upon any additional defenses that become available or apparent during pretrial proceedings and discovery in this action and hereby reserves the right to amend this Answer to assert all such further defenses.

## FIRST DEFENSE

Some or all of Plaintiff's Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by his failure to mitigate damages, if any.  Further, Plaintiff's claims are barred by the doctrine of avoidable consequences and equivalent doctrines.

## THIRD DEFENSE

Defendant asserts that any alleged adverse employment actions were taken for legitimate, non-retaliatory, and non-discriminatory business reasons, and would have occurred regardless of any alleged protected activity.

## FOURTH DEFENSE

Plaintiff cannot recover against Defendant to the extent that the damages alleged by Plaintiff are speculative or uncertain and because Plaintiff failed to allege facts sufficient to state claims for exemplary or punitive damages.

## FIFTH DEFENSE

At all times concerning this litigation, Defendant acted in a manner which was proper, reasonable, lawful and in exercise of good faith.

## SIXTH DEFENSE

Some or all of Plaintiff's claims may be barred by applicable statutes of limitation.

## SEVENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the equitable doctrines of unclean hands, laches, waiver, and/or estoppel.

## EIGHTH DEFENSE

Defendant relies on all other defenses afforded to them under the statutes identified in Plaintiff's Complaint.

## NINTH DEFENSE

Plaintiff's allegations do not amount to willful conduct. To the extent, if any, that Defendant is found to have violated any statute with respect to Plaintiff's Complaint (which Defendant denies), said violations were not willful.

## TENTH DEFENSE

To the extent Plaintiff seeks relief beyond the scope of any administrative charge or complaint filed with a relevant agency, such claims are barred for exceeding the permissible scope of administrative exhaustion.

## ELEVENTH DEFENSE

To the extent Plaintiff claims emotional or psychological injury, such claims are barred or limited by the failure to seek timely medical or psychological treatment, or by pre-existing conditions unrelated to Defendant's conduct.

## TWELFTH DEFENSE

Defendant had no knowledge that Plaintiff reported or was about to report a suspected violation of law to a public body at the time that Defendant terminated Plaintiff's employment.

## THIRTEENTH DEFENSE

Plaintiff's public policy claims are preempted by his claim under the Whistleblower Protection Act.

## FOURTEENTH DEFENSE

None of the actions taken by Defendant involved or were based on any time that Plaintiff took off or requested to take off under the FMLA and Defendant did not discharge Plaintiff or retaliate against Plaintiff as a result of any FMLA right.

## RESERVATION OF RIGHTS

Defendant reserves the right to file, upon completion of its investigation and discovery, such amended answers and affirmative defenses as may be appropriate.

## RELIANCE ON JURY DEMAND

Defendant, by its attorneys, relies upon Plaintiff's jury demand only to the extent that it demands a trial by jury as to any question of fact.

WHEREFORE, Defendant prays for judgment in its favor and against

Plaintiff as follows:

1.   That the Complaint be dismissed in its entirety;

2.   That Plaintiff be ordered to pay Defendant's reasonable attorneys' fees and costs incurred in defending this action; and

3.      That Defendant be awarded such other relief as the Court may deem appropriate.

Respectfully submitted

MILLER JOHNSON
Attorneys for Defendant

Dated:  June 26, 2025            */s/ Leigh M. Schultz*
Leigh M. Schultz (P17038)
Kalamazoo Office
100 W. Michigan Avenue, Suite 200
Kalamazoo, MI  49007
269-226-2983
schultzl@millerjohnson.com

Saniya Khare (P83020)
Detroit Office
500 Woodward Avenue, Suite 2800
Detroit, MI 48226-3428
313-435-2420
khares@millerjohnson.com

22