UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NOEL CORWIN,<br>Plaintiff,<br><br>-v-<br><br>KALAMAZOO VALLEY COMMUNITY COLLEGE,<br>Defendant. | No. 1:25-cv-469<br><br>Honorable Paul L. Maloney |

# OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Kalamazoo Valley Community College (KVCC) terminated Noel Corwin. Corwin filed this lawsuit alleging both federal and state causes of action. Corwin stipulated to dismiss his two state law claims, leaving only his two federal laws claims. Corwin pleads claims for interference and for retaliation under the Family and Medical Leave Act (FMLA). Defendant KVCC filed a motion for summary judgment. ECF No. 27. The record establishes that KVCC never interfered with or denied any leave requested by Corwin. And KVCC had legitimate, non-discriminatory reasons for terminating Corwin. The court will grant KVCC's motion.

## I.

A trial court should grant a motion for summary judgment only in the absence of a genuine dispute of any material fact and when the moving party establishes it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this burden, the moving party must identify those portions of the

pleadings, depositions, answers to interrogatories, admissions, any affidavits, and other evidence in the record, which demonstrate the lack of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018). The court must view the facts and draw all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Maben v. Thelen*, 887 F.3d 252, 263 (6th Cir. 2018) (citing *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

II.

In May 2023, KVCC offered Plaintiff a position with a July 17, 2023, start date. ECF No. 27–2 PageID.477. Plaintiff would serve as the Career & Continuing Education Program Coordinator in KVCC's Community Culinary and Nutrition (CCN) Department. *Id.* The position required forty hours a week with core hours between 8:00 a.m. and 5:00 p.m., "but hours are adjusted to support programming including some nights and weekends." ECF No. 27-5 Job Posting PageID.586. Plaintiff testified that he requested an adjustment to the start time between 8:30 and 9:00 a.m. because he needed to be able to take his children to school at 8:30. ECF No. 27-1 Corwin Dep. at 106 PageID.394. Plaintiff made his situation known at his interview, and he testified that Kate Miller approved the request. *Id.* at 33-34

PageID.764. Miller testified that she agreed to an 8:30 start time. ECF No. 27-4 Miller Dep. at 78 PageID.553.

Other individuals also worked in the CCN Department. The job posting listed more than a dozen "essential functions," including working "collaboratively with program directors, peers and support staff to accomplish unit goals." Job Posting PageID.586. Plaintiff worked with Lizzie Luchsinger and Leena Mergen. ECF No. 27-6 Dunneback Dep. at 18 PageID.590. Miller served as Plaintiff's direct supervisor. *Id.* at 13 PageID.588. Miller also served as Luchsinger's and Mergen's direct supervisor. *Id.*

The record contains evidence that Plaintiff and his departmental peers did not "work collaboratively." Plaintiff testified that Luchsinger treated him as a subordinate by assigning him tasks and other duties. Corwin Dep. at 30–31 PageID.375. In addition, both Luchsinger and Mergen withheld information from Plaintiff by omitting him from emails. *Id.* at 36 PageID.376. Plaintiff had one-on-one meetings with Miller throughout 2024 and raised these issues with her. *Id.* at 37 PageID.377. By August 2024, Plaintiff requested an investigation into the "open hostility" exhibited by Luchsinger and Mergen. *Id.* at 39 PageID.377. In October 2024, Plaintiff sent a letter to Mark Dunneback complaining about the situation. ECF No. 27–8 PageID.653. Plaintiff wrote that he found "it more and more difficult to work productively with the department due to the hostility I'm experiencing almost daily." *Id.* Miller agreed that the three individuals in the CCN Department did not work well together. Luchsinger and Mergen had "very strong personalities." ECF no. 27–4 Miller Dep. at 50 PageID.546.

In addition to the evidence about Plaintiff's colleagues, the record also contains evidence about Plaintiff's contribution to the problems in the CCN Department. Miller testified that Plaintiff "was not comfortable receiving feedback from any of the colleagues or from [her], so it made communication more challenging." *Id.* She stated that Plaintiff "had an issue with every employee in the department." *Id.* at 50–51 PageID.546. Miller recalled that Plaintiff had issues with one employee in the Department who asked to leave after KVCC hired Plaintiff. *Id.* at 51 PageID.546. And an intern identified issues with Plaintiff as a reason for leaving the department early. *Id.* Sometime in May or June 2024, Miller reached out to Amy Reynolds in Human Resources seeking advice on coaching and mentoring Plaintiff. *Id.* at 23–24 PageID.539.

KVCC opted to issue Performance Improvement Plans (PIPs) to all three employees in the CCN Department. In August 2024, Dunneback became the Associate Vice President at KVCC. Soon thereafter, Plaintiff first met with Dunneback about the personality conflicts in the CCN Department, among other things. Dunneback Dep. at 41–43 PageID.596–96. Dunneback also met with Luchsinger and Mergen. *See* Miller Dep. at 45 PageID.544. In late October, Dunneback decided to put Plaintiff, Luchsinger, and Mergen on PIPs. *See* Dunneback Dep. at 66 PageID.602. Leena Mergen received her PIP and successfully completed it. Miller Dep. at 45 PageID.544. Luchsinger resigned before Dunneback issued her the PIP. Dunneback Dep. 66 PageID.602; Miller Dep. at 45 PageID.544.

Dunneback and Miller met with Plaintiff on November 12, 2024, to issue and to discuss his PIP. Dunneback Dep. at 66 PageID.602; ECF No. 27-12 PIP. The PIP identified five areas of concern: communication, professionalism, teamwork, accuracy, and

other. PIP PageID.670. The document identified about 19 "specifics" (things to do). Included in the specifics, Plaintiff needed to arrive at work on time and provide at least 40 hours of efficient work each week. *Id.* The PIP identified his schedule as 8:30-5:00 with a half-hour lunch. *Id.* Plaintiff needed to provide a log for how he spent his time. *Id.* Plaintiff also needed to provide feedback (positive or negative) directly to the person who needs feedback. *Id.* Plaintiff recorded the meeting and attached a transcript of the meeting as an exhibit. ECF No. 31-7. Plaintiff acknowledged this new schedule. *Id.* PageID.807 ("Okay, so 8:30 to 5, Monday through Friday.").

Plaintiff took FLMA leave starting on November 18, 2024. Plaintiff met with Aaron Hillard on November 15, 2024. Corwin Dep. at 133-34 PageID.401. During the meeting, the two discussed the possibility that Plaintiff might take some time off. *Id.* at 181-82 PageID.413. Plaintiff later submitted paperwork for FMLA leave with a start date of November 18. ECF No. 27-13 PageID.674. Initially, the leave extended for three weeks, through December 9. *Id.* PageID.675. Plaintiff then sought and received an extension of his leave through December 23, 2024. ECF No. 27-15.

Plaintiff returned to work on January 8, 2025. Corwin Dep. at 192 PageID.415; *see* ECF No. 27-16 Email 1-8-25 PageID.688. That morning, Hillard instructed Plaintiff to provide an outline of priorities and projects. Corwin Dep. at 194 pageID.416. Plaintiff started an email chain that day stating that he would spend his time "updating my schedule through 4/1/25 and reviewing the last months emails. I will also review the notes from past CCN round table discussions." ECF No. 27-16 PageID.688. Plaintiff included Hillard, Miller, and Dunneback in his email.

Dunneback responded to Plaintiff's email late on January 9. Dunneback directed Plaintiff to share three items on the morning of January 10: (1) the updated schedule, (2) the action items Plaintiff identified and a priority listing of those items after reviewing the emails and CCN notes, and (3) a detailed work plan through January 20. *Id.* PageID.687. Dunneback then reviewed some of the items set forth in the PIP, including the work schedule (8:30 to 5:00 with a half-hour for lunch), contributing 40 hours of work each week, and providing a log of how Plaintiff used his time at work. *Id.* PageID.687-88.

Plaintiff responded on January 10 around 11:00 a.m. Plaintiff addressed his schedule and sought clarification and information about the other items Dunneback identified.

> I will continue to make additions and updates to my calendar with your approval of the proposed work projects outlined for Jan 10-20. My current published schedule reflects my availability to work outside of College hours. My daily start time has been approved during hiring (between 830-9a) with the awareness of having 2 toddlers in separate day cares and a fixed drop off/pick up time. My lunch time is taken while I am at my work station during my scheduled shift. As you are aware, the majority of my time as a Program Coordinator has been spent working in food production assisting with program support delivery.
>
> Is the intent for the next 6 days for me to prioritize my time working on Program Coordinator responsibilities?
>
> If that is the intent, should I focus my time developing new programming? Seasonal Produce Feature? Instructor led hands-on classes? Employee Engagement event?
>
> Will I be assigned to support upcoming classes? Brewing classes or Foodways?
>
> Should I prioritize operational needs or trainings? NutritionPRO/SOP research/Excel?

*Id.* PageID.687. Hillard responded a few hours later and specifically addressed Plaintiff's schedule.

> However, I would like to make sure that you are aware that work hours are generally from 8:00 – 5:00. I understand that Mark and Kate has [sic]

> approved an 8:30 – 5:00 PM scheduled with a 30 minute lunch. Please know that the lunch break cannot be used to alter the work schedule (arriving late or leaving early). Any additional adjustments to your work schedule must be approved by your supervisor (Kate Miller) or your Cabinet Level Administrator (Mark Dunneback). In those cases, appropriate leave balances may be required.

*Id.* PageID.686. Hillard ended his email by instructing Plaintiff to "provide [M]ark with the information he requested by 3:00 PM." *Id.* Plaintiff did not send any follow up email to Dunneback. Instead, Plaintiff responded individually to Hillard and explained that he did respond to Dunneback. *Id.*

Dunneback initiated a second email chain on Wednesday, January 15 around 11:00 a.m.

> Please provide the following requests at your earliest possible convenience today:
> -The updated schedule you created through 4/1/25*.
> -The action items you identified, and a priority listing of which items you will be working on as part of your email review & CCN discussions review*.
> -A detailed work plan for the next six business days (JAN 10 – JAN 20 timeframe)*.
> -Status of the uniforms you ordered (believe in July?) and related paperwork to get invoicing / payment cleared.
> -Status and completion of any outstanding procurement reports.
> -Resumption of work and timeline expectations for assigned SOP work for CCN.
> -A time log for November and December for any MFF work that was not supplied by deadlines so that they can be added to upcoming invoice.
> -A status update on the previously reported "Knife Sharpening" class.
> (Note: * signifies outstanding items originally requested in JAN-9 email, and then again by Hillard on JAN-10 – please provide these three items ASAP).
> Additionally – please complete leave reporting for the most recent days/times missed, identifying which leave balances you will be applying for JAN-13 & -14.[1]

[1] The court infers that Plaintiff did not come to work on either Monday January 13, 2025, or Tuesday, January 14, 2025.

ECF No. 27-18 PageID.700. Regarding the first three starred items, Plaintiff responded "[a]s noted in the response email sent last week, January 10, 2025, I have outlined several projects for your prioritization and approval. After a response on which direction/tasks I should focus time on, I'm happy to begin updating my reported work plan." *Id.* PageID.699. Dunneback answered succinctly, "Please email them now." *Id.* Plaintiff replied by sending most of the emails he sent on January 10 around 11:00 a.m. *Id.* PageID.698-99. Dunneback and Plaintiff spoke in person later that day. Around 2:00 p.m., Dunneback sent Plaintiff an email to memorialize the conversation. *Id.* PageID.698. According to Dunneback, he asked Plaintiff for the list of proposed projects and Plaintiff indicated that the list was embedded in the earlier emails. *Id.* Dunneback asked Plaintiff what projects from the list he had worked on today, and Plaintiff replied that he was reviewing and responding to emails. *Id.* And Plaintiff stated that he had not reached out to Kate Miller about work activities. *Id.*

On Thursday, January 16, Dunneback sent Hillard and Miller an email around 11:45 a.m. about Plaintiff. Dunneback went by Plaintiff's office at 8:45 in advance of a 9:00 a.m. meeting and Plaintiff was not yet at work. ECF No. 27-19 PageID.705. Plaintiff arrived at work at 8:58. *Id.* Plaintiff had not requested any change to his schedule. *Id.*

A week later, on January 23, 2025, Plaintiff emailed Dunneback, Hillard, and Miller around 9:45 a.m. stating that he had two health care appointments later that day and intended to leave by 11:30. ECF No. 27-20 PageID.707. Plaintiff intended to request FMLA time for the two appointments and indicated he would follow up with Rebecca Craft. *Id.* Approximately fifteen minutes later, Dunneback responded to Miller and Hillard that

Plaintiff reportedly arrived at work just before 9:00 a.m. and did not make any pre-approval requests to take time off for the two appointments. *Id.* Plaintiff testified that he did not think he needed to get pre-approved for time off for health care appointments. Corwin Dep. at 237 PageID.427.

Hillard made the decision to terminate Plaintiff. ECF No. 27-3 Hillard Dep. at 100 PageID.505. Hillard drafted a termination letter and emailed the letter to Leigh Schultz (defense counsel) at 1:00 p.m. on Thursday, January 23, 2025. ECF No. 27-22 PageID.722. Before work on Friday, January 24, 2025, at 7:16 a.m., Plaintiff sent an email to Hillard, Dunneback, and Miller stating that he would not be at work that day and would follow up with his health care provider to submit FLMA paperwork. ECF No. 31-15 PageID.856. Hillard and Dunneback tried to meet with Plaintiff that day, but Plaintiff did not show up for work. Hillard Dep. at 97-98 PageID.504-05. Hillard testified that he made the decision to terminate Plaintiff prior to his attempt to meet with Plaintiff. *Id.* at 98 PageID.505.

Hillard terminated Plaintiff effective Monday, January 27, 2025. ECF No. 27-21 Termination Letter. Hillard stopped by Plaintiff's office on January 27 at 8:40 and again at 9:30 and could not find Plaintiff. Hillard Dep. at 97 PageID.505. The Termination Letter relies on events that occurred after KVCC issued Plaintiff his PIP in November 2024. Hillard identified two primary issues. First, Hillard stated that Plaintiff had not met performance requirements. *Id.* Hillard pointed to the requests made by Dunneback in the various email exchanges, requests Plaintiff had not addressed. *Id.* Second, Hillard noted that Plaintiff had twice not reported to work by 8:30 and had not communicated any reason for showing up late. *Id.* Around 9:50, Plaintiff emailed Hillard asking why his KVCC portal

had been blocked. ECF No. 31-14 PageID.854. Hillard responded back around 11:45 and attached the termination letter to his response.

III.

"The FMLA creates two theories of recovery: the 'entitlement' or 'interference' theory, applicable where an employer denies an employee a statutory entitlement, and the 'retaliation' theory, applicable where an employer acts against an employee because he invoked FMLA rights." *Paris v. MacAllister Mach. Co.*, 175 F.4th 787, 796 (6th Cir. 2026). Plaintiff pleads both an interference claim and a retaliation claim. Without direct evidence of either interference or retaliation, a plaintiff may prove either theory using the familiar *McDonnell Douglas* burden-shifting framework. *Smyer v. Kroger Ltd. P'ship*, No. 22-3962, 2024 WL 1007116, at *4 (6th Cir. Mar. 8, 2024) (per curiam) (citing *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 427, 432–33 (6th Cir. 2014) and *Romans v. Michigan Dep't of Human Servs.*, 668 F.3d 826, 840, 842 (6th Cir. 2012)); *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

A.

To establish a prima facie claim for FMLA interference, Plaintiff must show (1) he was an eligible employee, (2) the defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave his employer notice of his intent to take leave, and (5) the employer denied Plaintiff FMLA benefits to which he was entitled. *Paris*, 175 F.4th at 796.

Plaintiff has not established a genuine issue of material fact for trial on his interference claim. Plaintiff has not put forth any evidence to support the fifth element. KVCC did not

prevent Plaintiff from taking any of his requested FMLA time off. The record shows that Plaintiff had approved FMLA time off from November 18 to December 23, 2024. Plaintiff returned to work on January 8, 2025. The record contains no evidence that KVCC denied Plaintiff use of his FMLA benefits (time off) during this time. Plaintiff missed work on January 13 and 14. The record contains no evidence about why Plaintiff missed this time or whether the missed days might fall under FMLA. The record contains no evidence that KVCC denied Plaintiff use of FMLA on these two days. On Thursday, January 23, 2025, Plaintiff informed Hillard, Miller, and Dunneback that he would leave work at 11:30 for medical appointments and that he intended to use FMLA benefits for this time off. The record contains no evidence that KVCC stopped Plaintiff from leaving work at 11:30 for those medical appointments.

Before work on Friday, January 24, 2025, Plaintiff informed Hillard, Miller, and Dunneback that he was taking the day off. The record does not contain any evidence that anyone prevented Plaintiff from taking that day off. Plaintiff's email did not express any intention to take additional days off. And, Hillard made the decision to terminate Plaintiff the day before, on January 23.

B.

For a prima facie claim for FMLA retaliation, Plaintiff must show (1) he was engaged in a protected activity, (2) his employer knew he was engaged in a protected activity, (3) the employer took an adverse action against Plaintiff, and (4) a causal connection between the protected activity and the adverse action. *Paris*, 175 F.4th at 797. An employee's request to take FMLA leave constitutes a protected activity. *Id.* at 799. At the prima facie stage, the

causal element for an FMLA retaliation claim "can be established solely on the basis of close temporal proximity." *Render v. FCA US, LLC*, 53 F.4th 905, 921 (6th Cir. 2022).

Plaintiff has established at least a genuine issue of material fact for his prima facie claim for FMLA retaliation. Plaintiff engaged in protected activity by taking FMLA time off in November and December. KVCC was aware of Plaintiff's use of FMLA time. He also notified Dunneback, Hillard, and Miller on January 23 about his medical appointments that day and his intent to use FMLA time for those appointments. Plaintiff then suffered an adverse employment action on January 23 when Hillard decided to terminate Plaintiff. The temporal proximity between his use of FMLA leave and his termination establishes the causal element for his prima facia case.

C.

KVCC has established a legitimate, non-discriminatory reason for terminating Plaintiff. *See Demyanovich*, 747 F.3d at 427. Plaintiff did not meet the expectations of his supervisors or perform the requirements of his job. The Termination Letter stated that, after KVCC placed Plaintiff on the PIP, he "continued to fail to meet performance requirements and expectations and ha[s] continued to exhibit unacceptable behaviors and attitudes." Termination Letter PageID.709. The issues identified in the Termination Letter provide a basis for terminating Plaintiff regardless of his use of FMLA.

> The right to non-interference with medical leave is not absolute. An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or FMLA request than he or she did before submitting that request. An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.

*Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (citation modified).

First, after Plaintiff returned to work in January, Dunneback asked Plaintiff to identify work projects and to prioritize those projects. Dunneback made this request by email on January 8 and again on January 9. Plaintiff never provided Dunneback with a list of projects or priorities. Plaintiff responded with questions on January 10. Plaintiff's questions functionally asked Dunneback to identify what Plaintiff should work on and how he should prioritize them. Later that day, Hillard told Plaintiff to address Dunneback's request. Dunneback made another request for projects and priorities on January 15, to which Plaintiff responded by resending the same email asking questions. Dunneback then visited Plaintiff personally and again asked Plaintiff for the same information about projects and priorities. The record shows Plaintiff never properly responded to Dunneback's request.

In addition, Plaintiff did not show up to work on time. The PIP directed Plaintiff to arrive by 8:30. Plaintiff acknowledged this schedule at the PIP meeting; he explicitly discussed the schedule with Dunneback. Plaintiff showed up to work after 8:30 on January 16 and again on January 23.

Because KVCC has established a legitimate basis for terminating Plaintiff, under the burden-shifting scheme, Plaintiff can avoid summary judgment by showing that the reasons offered by KVCC are pretextual. *See Thistlethwaite v. Pace Air Freight, Inc.*, No. 25-5793, 2026 WL 1498278, at *2 (6th Cir. May 28, 2026); *Johnson v. Evolent Health, LLC*, No. 22-5574, 2023 WL 2326676, at *8 (6th Cir. Mar. 2, 2023). At the third stage in the *McDonnell Douglas* scheme, a plaintiff may show that the employer's explanation for the adverse

employment action was a pretext for illegal conduct by establishing that the explanation (1) has no basis in fact, (2) did not actually motivate the employer's decision, or (3) was insufficient to motivate the employer's decision. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The Sixth Circuit has further instructed that a plaintiff can "also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009).

Plaintiff first argues that KVCC did not provide him with a copy of the PIP. Plaintiff reasons that "it is illogical to argue that an employee was terminated for not demonstrating improvement on a PIP when the employee cannot even view the content of the PIP." ECF No. 31 at 22 PageID.748. Plaintiff's argument does not create a question of fact concerning pretext. Without dispute, Plaintiff was aware that he had been placed on a Performance Improvement Plan. Plaintiff has not put forth any evidence that he was unaware of the concerns that KVCC identified as the reasons for his termination. The record contains evidence that Plaintiff was aware of the issues identified in the termination letter: his failure to properly respond to Dunneback's repeated instructions and his failure to report to work on time.

Second, Plaintiff argues that a genuine issue of fact exists concerning his arrival time and whether his allegedly late arrivals provide a basis for termination. Plaintiff contends he had permission to arrive as late as 9:00 a.m. Plaintiff's argument does not create a genuine issue of material fact to be resolved by a factfinder. Nor does this argument establish pretext.

Viewed in the light most favorable to Plaintiff, the record supports Plaintiff's argument that, when hired, he had permission to arrive between 8:30 and 9:00. The record establishes that Plaintiff's start time subsequently changed. Without dispute, Hillard instructed Plaintiff to arrive by 8:30 as part of the PIP. The transcript of the PIP meeting confirms that Hillard communicated this schedule to Plaintiff and that Plaintiff understood what the expected arrival time was. Dunneback also communicated Plaintiff's 8:30 start time in his January 10 email. And when Plaintiff responded that he had a different start time, Hillard replied and reiterated that Plaintiff had an 8:30 start time. Without dispute, Plaintiff did not arrive by 8:30 on at least two occasions in January 2025. Plaintiff has not identified an unresolved question of fact; his start time changed. Additionally, Hillard changed Plaintiff's start time before Plaintiff notified anyone at KVCC of his intent to take FMLA leave.

Third, Plaintiff argues that his alleged failure to respond to Dunneback's emails does not justify his termination. Plaintiff insists on January 10 he did respond. Plaintiff faults Dunneback for not responding to Plaintiff's reasonable inquiries. Plaintiff contends that reasonable people could disagree about whether he provided Dunneback with the requested information. Plaintiff has not established a genuine issue of material fact on this dispute. The email chain speaks for itself. Plaintiff did not identify projects for him to work on and he did not attempt to prioritize any projects. Rather, Plaintiff asks Dunneback what projects should be prioritized. Additionally, Hillard and Dunneback both informed Plaintiff that he had not provided the requested information. In his January 10 response to Plaintiff's email, Hillard made it clear to Plaintiff that he had not provided the information Dunneback

sought. In his January 15 email and personal meeting with Plaintiff, Dunneback made it clear that Plaintiff had not identified projects and priorities as had been requested.

IV.

The record supports Defendant KVCC's motion for summary judgment. Plaintiff has not established a prima facie case for his FMLA interference claim. Plaintiff was able to take off work each and every time he announced his intention to do so. Plaintiff likely presented sufficient evidence for his retaliation claim. But KVCC had legitimate, non-discriminatory reasons for terminating Plaintiff. After being placed on a Performance Improvement Plan, Plaintiff did not properly respond to emails asking him (repeatedly) to identify projects and priorities. Having been told to arrive by 8:30, Plaintiff arrived late twice in the same month. Plaintiff has not demonstrated a dispute of fact concerning either of those reasons.

## ORDER

For the reasons provided in the accompanying Opinion, the court **GRANTS** defendant Kalamazoo Valley Community College's motion for summary judgment. ECF No. 27. **IT IS SO ORDERED.**

Date: November 20, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge